**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| JOHN WAGNER, BRUCE MACDONALD, SYLBERIA ANN RAJI, and MICHAEL CARL MAMAY, in their individual capacities and on behalf of the Stiefel Laboratories, Inc. Employee Stock Bonus Plan, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action File No. |
| v. | ) ) | 1:12-cv-03234-WBH |
| STIEFEL LABORATORIES, INC., a Delaware corporation, CHARLES W. STIEFEL, BRENT D. STIEFEL, TODD STIEFEL, STEPHEN KARASICK, MICHAEL CORNELIUS, and MATT S. PATTULLO, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' CONSOLIDATED**
**MOTION FOR SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ...................................................................1

II.    LEGAL STANDARD...........................................................2

III.   ARGUMENT.........................................................................4

      A.    Plaintiffs have a statutorily prescribed right to proceed on behalf of the Plan under ERISA § 502(a)(2). ...................4

            1.    There is no distinction between fiduciary duties owed to Plan participants and fiduciary duties owed to the Plan.........................................................5

            2.    Defendants distort *LaRue* (again). ...........................6

            3.    There is no prudential standing limitation on Plaintiffs' right to bring their claims on behalf of the Plan. ..................................................................9

      B.    The general releases do not preclude Plaintiffs from pursuing relief under ERISA..........................................14

      C.    ERISA requires Defendants to disclose complete and accurate information to Plan participants, and the facts establish that Defendants breached this duty in this case................18

      D.    Defendants' narrow reading of ERISA § 406 should be rejected as there are sufficient facts to establish the existence of a prohibited transaction. ................................23

      E.    The record overwhelmingly establishes that Defendants breached their fiduciary duties under ERISA §404(a) by not ordering an interim valuation in late 2009 or early 2009.............................................................................28

      F.    There are sufficient facts to establish that Defendants should have suspended optional diversification..............................34

      G.    Plaintiffs' claims are timely. .........................................37

i

H.      There is no requirement that undervaluation claims be
        brought under ERISA § 502(a)(1)(B)..............................................42

I.      Plaintiffs have established that their derivative
        monitoring duty claims under ERISA § 404 and breach
        of co-fiduciary claims under ERISA § 405 should
        proceed to trial. .............................................................................44

IV.   CONCLUSION .......................................................................................45

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*American Pipe & Constr. Co. v. Utah,*
  414 U.S. 538 (1974)....................................................... 39, 40, 41, 42

*Armstrong v. LaSalle Bank Nat'l Ass'n,*
  446 F.3d 728 (7th Cir. 2006)..............................................22

*Bacon v. Stiefel Labs., Inc.,*
  714 F. Supp. 2d 1186 (S.D. Fla. 2010) ..............................23, 25, 28

*Bacon v. Stiefel Labs. Inc.,*
  No. 09-21871, 2011 WL 4944122 (S.D. Fla. Oct. 17, 2011) ...........17

*Barnes v. Lacy,*
  927 F.2d 539 (11th Cir. 1991)...........................................20, 21

*Blankenship v. Chamberlain,*
  695 F. Supp. 2d 966 (E.D. Mo. 2010) ...............................12

*Bowles v. Reade,*
  198 F.3d 752 (9th Cir. 1999)..............................................16

*Camera v. Dell, Inc.,*
  No. 13-876, 2014 WL 2767359 (W.D. Tex. June 17, 2014)...........37

*Chao v. Hall Holding Co., Inc.,*
  285 F.3d 415 (6th Cir. 2002)..............................................29

*Chesemore v. Alliance Holdings, Inc.,*
  886 F. Supp. 2d 1007 (W.D. Wisc. 2012) .........................27

*Comm'r v. Keystone Consol. Indus., Inc.,*
  508 U.S. 152 (1993)........................................................24

*Craig v. Boren,*
  429 U.S. 190 (1976)........................................................11

*Crown, Cork & Seal Co., Inc. v. Parker*,
    462 U.S. 345 (1983) ............................................................................. 39, 41

*Eddy v. Colonial Life Ins. Co. of Am.*,
    919 F.2d 747 (D.C. Cir. 1990) ....................................................................... 21

*Edmonson v. Lincon Nat. Life Ins. Co.*,
    725 F.3d 406 (3d Cir. 2013) ...................................................................... 9, 34

*Ervast v. Flexible Prods. Co.*,
    346 F.3d 1007 (11th Cir. 2003) ................................................................... 18

*Finnerty v. Stiefel Labs, Inc.*,
    756 F.3d 1310 (11th Cir. 2014) .......................................................... *passim*

*Fisch v. Suntrust Banks, Inc.*,
    511 Fed. App'x 906 (11th Cir. 2013) .......................................................... 19

*Goldberg v. Bear, Stearns & Co., Inc.*,
    912 F.2d 1418 (11th Cir. 1990) ................................................................... 15

*Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*,
    530 U.S. 238 (2000) ..................................................................................... 43

*Heffner v. Blue Cross & Blue Shield of Ala., Inc.*,
    443 F.3d 1330 (11th Cir. 2006) ................................................................... 42

*Henry v. Champlain Enters., Inc.*,
    212 F.R.D. 73 (N.D.N.Y. 2003) ................................................................... 35

*Herman v. Charter Med. Corp.*,
    140 F.3d 1413 (11th Cir. 1998) ............................................................. 17, 18

*Herman v. NationsBank Trust Co. (Ga.)*,
    126 F.3d 1354 (11th Cir. 1997) ..................................................................... 4

*Hill v. BellSouth Corp.*,
    313 F. Supp. 2d 1361 (N.D. Ga. 2004) ....................................................... 18

*Howard v. Shay*,
    100 F.3d 1484 (9th Cir. 1996) ..................................................................... 29

*Howell v. Motorola, Inc.*,
  No. 03–5044, 2005 WL 2420410 (N.D. Ill. Sep. 30, 2005) ............................16

*In re JDS Uniphase Corp. ERISA Litig.*,
  No. 03–4743, 2006 WL 2597995 (N.D. Cal. Sep. 11, 2006) ...........................16

*Johnson v. Couturier, et al.*,
  No. 05–2046, 2006 WL 2943160 (E.D. Cal. Oct. 13, 2006)...........................16

*Lanfear v. Home Depot, Inc.*,
  679 F.3d 1267 (11th Cir. 2012).......................................................................19

*LaRue v. DeWolff, Boberg & Associates, Inc.*,
  552 U.S. 248 (2008)................................................................................*passim*

*Leigh v. Engle*,
  727 F.2d 113 (7th Cir. 1984)....................................................................9, 24

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  134 S. Ct. 1377 (2014)..................................................................................11

*Love v. City of Mobile*,
  724 F. Supp. 2d 1208 (S.D. Ala. 2010) ..........................................................33

*Mass. Mut. Life Ins. Co. v. Russell*,
  473 U.S. 134 (1985)................................................................................*passim*

*McCabe v. Capital Mercury Apparel*,
  752 F. Supp. 2d 396 (S.D.N.Y. 2010) ............................................................33

*McDougall v. Donovan*,
  552 F. Supp. 1206 (N.D. Ill. 1982)................................................................27

*Neil v. Zell*,
  677 F. Supp. 2d 1010 (N.D. Ill. 2009)............................................................27

*Neil v. Zell*,
  767 F. Supp. 2d 933 (N.D. Ill. 2011)..............................................................34

*Perez v. GreatBanc Trust Co., et al.*,
  No. 12-1648 (C.D. Cal., June 2, 2014)............................................................29

*Phillips v. Amoco Oil Co.*,
  799 F.2d 1464 (11th Cir. 1986) ....................................................................21

*Piazza v. Ebsco Indus., Inc.*,
  273 F.3d 1341 (11th Cir. 2001) ......................................................................9

*Raie v. Cheminova, Inc.*,
  336 F.3d 1278 (11th Cir. 2003) ....................................................................40

*Reich v. Johnson*,
  891 F. Supp. 208 (D.N.J. 1995) ...................................................................38

*Sandoval v. Simmons*,
  622 F. Supp. 1174 (C.D. Ill. 1985) ..............................................................27

*In re Schering Plough Corp. ERISA Litig.*,
  589 F.3d 585 (3d Cir. 2009) .............................................................15, 16, 17

*In re SunTrust Banks, Inc. ERISA Litig.*,
  No. 08-3384 (N.D. Ga., Oct. 25, 2010) ........................................................19

*Tileston v. Ullman*,
  318 U.S. 44 (1943) .......................................................................................11

*Varity Corp. v. Howe*,
  516 U.S. 489 (1996) ...............................................................................5, 6, 8

*Wakamatsu v. Oliver*,
  868 F. Supp. 2d 866 (N.D. Cal. 2012) ..........................................................32

*Waldron v. Dugan*,
  No. 07-286, 2007 WL 4365358 (N.D. Ill., Dec. 13, 2007) ...........................12

*Woods v. Southern Co.*,
  396 F. Supp. 2d 1351 (N.D. Ga. 2005) .........................................................18

**Statutes**

28 U.S.C. § 1407.............................................................................................14

ERISA § 3, 29 U.S.C. § 1002....................................................................24, 28

ERISA § 101, 29 U.S.C. § 1021 ................................................................36

ERISA § 404, 29 U.S.C. § 1104 ...........................................................*passim*

ERISA § 405, 29 U.S.C. § 1105 ......................................................2, 3, 44

ERISA § 406, 29 U.S.C. § 1106 ...........................................................*passim*

ERISA § 408, 29 U.S.C. § 1108 ...........................................................4, 24

ERISA § 409, 29 U.S.C. § 1109 ...........................................................*passim*

ERISA § 413, 29 U.S.C. § 1113 ......................................................37, 38, 39

ERISA § 502, 29 U.S.C. § 1132 ...........................................................*passim*

**Rules**

Fed. R. Civ. P. 23 ...........................................................................14, 41

Fed. R. Civ. P. 23.1 ...............................................................................12

Fed. R. Civ. P. 56(a) ...............................................................................4

**Regulations**

*Office of Pension & Welfare Benefits Programs*, Op. No. 75-103,
    1975 WL 4573  (Oct. 22, 1975) .....................................................26

Treas. Reg. Section 54.4975-11(d)(5) ..........................................29, 30

# I.    INTRODUCTION

Left with no substantive defenses to their egregious breaches of fiduciary duty under ERISA that robbed a retirement plan of tens of millions of dollars, Defendants present a potpourri of conclusory arguments in their motion for summary judgment that have no basis in law or fact. Several of Defendants' arguments are recycled from their currently pending motion to dismiss, nearly all are based on incorrect, incomplete, and flawed interpretations of ERISA, and some even fail to list a single piece of evidence in seeking dismissal of Plaintiffs' claims. All of these arguments should be rejected by the Court.

The undisputed material facts support Plaintiffs' claims and demonstrate Defendants' abject failure to act in the best interests of the Plan, including: (1) Defendants' hiring of Terence Bogush, an inexperienced and unqualified appraiser to value the Plan-held company stock; (2) Defendants' approval of Mr. Bogush's inadequate appraisals to set the price at which the Defendants would redeem Plan-held company stock; (3) Defendants' actual knowledge that the value of the company was multiples of what was stated by Mr. Bogush and represented to Plan participants; (4) Defendants' active negotiations for the sale of the company after representing to Plan participants that the company would remain privately held; (5) the Stiefel family's calculation and discussion of the additional amounts that they would receive as a result of Plan redemptions occurring at prices well

1

below any potential sales price of the company, and (6) the sale of the company in April 2009 for a price *more than four times* the price represented to Plan participants just two months prior to the sale. As a result, Defendants' summary judgment motion should be denied in all respects.

## II.  LEGAL STANDARD[1]

Plaintiffs bring claims against all Defendants for breaches of fiduciary duty under ERISA § 404, 29 U.S.C. § 1104, claims for co-fiduciary liability under ERISA § 405, 29 U.S.C. § 1105, and claims for prohibited transactions under ERISA § 406, 29 U.S.C. § 1106. *See* Plaintiffs' Second Amended Complaint ("SAC"), ECF No. 27, ¶¶ 130-168. While Defendants purport to move for summary judgment on all these claims, Defendants have in reality taken certain allegations within Plaintiffs' claims and seek "summary judgment" on these allegations. In the process, they leave Plaintiffs and the Court to make sense of an over 2,300 page filing that fails to even mention the appropriate standards under ERISA or refute the actual claims Plaintiffs have brought.[2]

---

[1] Plaintiffs incorporate by reference to this opposition their statement of undisputed material facts in support of their motion for partial summary judgment (ECF No. 73-2), their response to Defendants' statement of undisputed material facts, and their statement of additional facts filed in connection with this opposition.

[2] For instance, Defendants attempt to summarize all of Plaintiffs' ERISA § 404 allegations in seven categories (*see* ECF No. 74 at 3), even though Plaintiffs' complaint lists eleven specific examples of how Defendants breached their fiduciary duties under ERISA § 404. *See* SAC, ¶¶ 136-146.

The standards by which Defendants' summary judgment motion must be measured, however, are the strict fiduciary duties imposed by Congress pursuant to ERISA. Under ERISA § 404, a fiduciary is required to discharge his duties with respect to a plan solely in the interests of the participants and beneficiaries, and, *inter alia*, for the exclusive purpose of providing benefits to participants and their beneficiaries, with the care, skill, prudence, and diligence that a prudent man acting in a like capacity and familiar with such matters would use for the conduct of an enterprise of like character with like aims, and in accordance with the plan documents. ERISA § 404(a), 29 U.S.C. § 1104(a).

Under ERISA § 405, a fiduciary with respect to a plan is liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan if: (i) he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (ii) by his failure to comply with ERISA § 404(a)(1), 29 U.S.C. § 1104 (a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (iii) he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts to remedy the breach. ERISA § 405(a)(1)-(3), 29 U.S.C. § 1105(a)(1)-(3).

Finally, under ERISA § 406, a fiduciary with respect to a plan may not cause the plan to engage in a transaction, if he knows or should know that such transaction

constitutes a direct or indirect sale or exchange or transfer of any property between a plan and a party in interest of any assets of the plan unless the transaction is exempt as set forth in ERISA § 408. *See* ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1). These standards, which Defendants wholly ignore, control the Court's evaluation of Plaintiffs' claims. *See, e.g., Herman v. NationsBank Trust Co. (Ga.)*, 126 F.3d 1354, 1361-62 (11th Cir. 1997) (summarizing ERISA fiduciary standards).[3]

Though not mentioned by Defendants, they, as the moving parties, bear the burden to establish the absence of a genuine issue as to any material fact under Fed. R. Civ. P. 56(a) – a burden Defendants fall well short of as they fail to cite any relevant evidence (much less satisfy the appropriate legal standard) to support their arguments. What facts Defendants do offer are readily countered by facts Plaintiffs cite that demonstrate genuine issues of material fact. Accordingly, Defendants are not entitled to summary judgment on any of their arguments.

## III.   ARGUMENT

**A.   Plaintiffs have a statutorily prescribed right to proceed on behalf of the Plan under ERISA § 502(a)(2).**

As set forth by Plaintiffs in their opposition to Defendants' motion to dismiss, ERISA §§ 502(a)(2) and 409 unambiguously authorize plan participants to bring

---

[3] Importantly, Defendants do not contest that they were fiduciaries or otherwise acted in a fiduciary capacity, apparently recognizing the overwhelming evidence in this case establishing their fiduciary status.

suits on behalf of a plan against fiduciaries who breach their duties. ECF No. 48.
Nevertheless, Defendants make three arguments related to standing: (1) that their
misrepresentations and omissions were breaches of duty owed to the individual
Plaintiffs only and not to the Plan; (2) that their misrepresentations and omissions
did not harm the Plan; and (3) that the doctrine of "prudential standing" bars
Plaintiffs' claims on behalf of the Plan. These meritless arguments are a tangle of
contradictory assertions and mischaracterizations of governing Supreme Court case
law, and should be rejected.

### 1. There is no distinction between fiduciary duties owed to Plan participants and fiduciary duties owed to the Plan.

Defendants argue that their fiduciary duties "are owed to participants, and not
to plans." ECF No. 74 at 31. But this distinction is illusory, because lying to or
misleading participants *is* a breach of fiduciary duty *to the Plan* under the plain
language of ERISA § 404(a)(1) (describing duties to be discharged "with respect to
a plan"). In *Varity Corp. v. Howe*, the Supreme Court ruled that making
misrepresentations to plan participants is a breach of the ERISA § 404 duty of
loyalty owed to the plan. 516 U.S. 489, 506 (1996). The Supreme Court explained:

> [W]hether [a fiduciary's] deception violated ERISA-imposed fiduciary
> obligations [] calls for a brief, affirmative answer. ERISA requires a
> "fiduciary" to "discharge his duties *with respect to a plan* solely in the
> interest of the participants and beneficiaries." ERISA § 404(a). To
> participate knowingly and significantly in deceiving *a plan's
> beneficiaries* in order to save the employer money at the beneficiaries'
> expense is not to act "solely in the interest of the participants and

> beneficiaries." As other courts have held, "[l]ying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in section 404(a)(1) of ERISA."

*Varity*, 516 U.S. at 506 (emphasis added) (citations omitted). Though Defendants misleadingly cite *Varity* as if it reached the opposite holding (*see* ECF No. 74 at 31-32), the Supreme Court had no trouble equating misrepresentations *to plan beneficiaries* as a breach of fiduciary duty *to the Plan* based on the plain language of ERISA § 404(a). Accordingly, Defendants misconduct in this case violated their fiduciary duties to the Plan under ERISA § 404, and ERISA § 502(a)(2) provides plan participants with standing to seek relief for these breaches.

### 2.     Defendants distort *LaRue* (again).

Defendants argue that Plaintiffs' requested relief under ERISA § 502(a)(2) is unavailable because Plaintiffs' claims impact some but not all Plan participants. Ironically, they base this argument on *LaRue v. DeWolff, Boberg & Associates, Inc.*, 552 U.S. 248 (2008), which held exactly the opposite. As already set forth in two pleadings that are relevant for the Court's consideration here, *LaRue* confirms Plaintiffs' ability to bring claims on behalf of the Plan. ECF No. 43 at 17-18; ECF No. 48 at 8-17. In *LaRue*, the Court explained that "[w]hether a fiduciary breach diminishes plan assets payable to all participants and beneficiaries, or only to persons tied to particular individual accounts, it creates the kind of harms that concerned the draftsmen of § 409." *Id.* at 256. Moreover, the Court held that §

502(a)(2) "authorize[s] recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." *Id*. The Court distinguished such 'plan injuries' from individual injuries suffered outside the plan, such as emotional or consequential injuries. *Id*. at 253-54 (citing *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985)).

Here, Defendants' breaches of fiduciary duty caused losses to the Plan, as a result of the participants who redeemed their shares for far less than what they were worth at the time based on the Defendants' false representations of the value of the stock. As a result, Plaintiffs seek to have these losses restored to Plan accounts pursuant to ERISA §§ 502(a)(2) and 409, which *LaRue* unequivocally permits. *See* SAC, ¶¶ 14, 31, 111-116.

Undeterred by what *LaRue* actually says, Defendants continue to claim that *LaRue* found that "§ 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries." ECF No. 74 at 31. Based on this flawed understanding of *LaRue*, Defendants contend that relief is not available under ERISA §§ 502(a)(2) and 409 because "the Plan was not harmed by, nor did it benefit from, Plaintiffs' elections," and because this case concerns only "harm [] to the Plaintiffs themselves." ECF No. 74 at 32. Yet as they did in their motion to dismiss, Defendants misquote *LaRue*. The full sentence quoted by Defendants states:

7

> We therefore hold that although § 502(a)(2) does not provide a remedy
> for individual injuries distinct from plan injuries, that provision does
> authorize recovery for fiduciary breaches that impair the value of plan
> assets in a participant's individual account.

*LaRue*, 552 U.S. at 256 (emphasis added). Read in full, the sentence Defendants

half-quote shows that Plaintiffs, in fact, are entitled to the relief they seek under §

502(a)(2).[4] Defendants ignore that their fiduciary breaches caused losses to affected

participants' *Plan accounts*. And as *LaRue* confirms, this "creates the kind of harms

that concerned the draftsmen of § 409." 552 U.S. at 256. Thus, the law under *Varity*,

*LaRue* and *Russell* is clear: Relief under §§ 502(a)(2) and 409 must inure to the Plan

itself, and that is precisely what Plaintiffs seek in this case.

Defendants also argue that § 502(a)(2) does not comprehend relief where a

Defendants' fiduciary breach causes a loss to plan assets but it benefits the plan

accounts of other participants. Putting aside Defendants' failure to provide any

evidence that supports this allegation, the statute says nothing of the sort. Indeed, it

would be extraordinarily perverse to preclude Plaintiffs and the affected participants

from any recovery by virtue of the fact that some Plan participants' accounts

benefitted from Defendants' breaches. Relief is recoverable in an action on behalf of

the plan whether the fiduciary misconduct impacted "all participants and

beneficiaries, or only … persons tied to particular individual accounts." *LaRue* at

---

[4] Defendants' second effort to change the language of *LaRue* speaks volumes about
the *bona fides* of their argument based on the decision. *See, e.g.,* ECF No. 48 at 19.

255-56. Hence, the recovery sought by Plaintiffs on behalf of the Plan for the diminution of benefits they suffered in their Plan accounts when they did not receive the actual value of their shares are plan injuries under *LaRue*, and Plaintiffs have standing under §§ 502(a)(2) and 409 to seek recovery for these losses.[5]

In addition, Defendants' arguments overlook that Plaintiffs seek disgorgement (*see* SAC, § VII) from Defendants because of their profits from redeeming shares below their actual value (*see* Pls.' SF, ¶ 70). Under well-established ERISA jurisprudence, financial loss to a plan is not a requirement for a disgorgement claim under ERISA. *See Edmonson v. Lincon Nat. Life Ins. Co.*, 725 F.3d 406, 415 (3d Cir. 2013); *see also Engle*, 727 F.2d at 122 ("ERISA clearly contemplates actions against fiduciaries who profit by using trust assets, even where the plan beneficiaries do not suffer direct financial loss.").

### 3. There is no prudential standing limitation on Plaintiffs' right to bring their claims on behalf of the Plan.

Defendants ask this Court to hold what no other court has held: that the "prudential standing" doctrine trumps Congress's express grant of authority to

---

[5] Nor does *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341 (11th Cir. 2001), a pre-*LaRue* case cited by Defendants, compel a different conclusion. *Piazza* was not 'agreeing with' the conflict argument raised by the defendants in that case, but with the argument that the plaintiff lacked standing to bring claims for fiduciary breaches that occurred during times *when he was not a participant*, and which consequently did not harm him. *Id.* at 1353. The court then held that "we need not address [defendants'] conflicts argument," which was, in any event, relevant only to class certification.

ERISA plan participants to sue for relief on behalf of the plan in ERISA
§§ 502(a)(2) and 409. But "prudential standing" affords Defendants no such relief,
and ignores the fundamental difference between a litigant asserting the rights of
others, and a participant asserting the rights of a pension plan. ERISA § 502(a)(2)
permits plan participants to bring an action "for appropriate relief under [ERISA
§ 409]." ERISA § 409, in turn, provides that fiduciaries who breach their duties
"shall be personally liable to make good *to such plan* any losses *to the plan* resulting
from each such breach." (emphasis added). Thus Plaintiffs are plainly asserting the
right that Congress granted them to pursue relief for the Plan.

    In addition, under § 502(a)(2), Congress gave plan participants precisely the
same right to seek relief on behalf of their plans as it gave to the Secretary of Labor.
As the Supreme Court explained, the "[i]nclusion of the Secretary of Labor [in
§ 502(a)(2)] is indicative of Congress' intent that actions for breach of fiduciary
duty be brought in a representative capacity on behalf of the plan as a whole.
Indeed, the common interest shared by all four classes [of § 502(a)(2) plaintiffs]
is in the financial integrity of the plan." *Russell*, 473 U.S. at 142, n.9.[6]

---

[6] *LaRue* confirmed that a loss that affected fewer than all (or even only one)
participant is a plan loss remediable under §§ 502(a)(2) and 409, and put to rest the
misinterpretation of the language in *Russell* that relief needed to be on behalf of the
"entire plan" meant that the loss must affect all or substantially all of the participants
to trigger §502(a)(2) relief. *LaRue*, 552 U.S. at 254-55. Defendants here try to revive
that misinterpretation, but need to stand *LaRue* on its head to do so.

Furthermore, courts are not permitted to exercise the doctrine of "prudential standing" to undo Congress's express grants of statutory authority:

> We do not ask whether in our judgment Congress should have authorized [a] suit, but whether Congress in fact did so. Just as a court cannot apply its independent policy judgment to recognize a cause of action that Congress has denied, it cannot limit a cause of action that Congress has created merely because "prudence" dictates.

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1388 (2014). Here, Congress explicitly gave plan participants standing to bring a cause of action on behalf of a plan under § 502(a)(2), thereby forecloseing Defendants' "prudential standing" argument. Indeed, no case that Defendants cite actually addresses the question of standing under ERISA § 502(a)(2).

In addition, "prudential standing" does not preclude litigants from asserting the rights of third parties, but instead precludes plaintiffs *who have no standing* themselves from gaining standing by resting on the rights of others. For example, the Supreme Court ruled that a doctor had no standing to challenge a contraceptive medication law based on the rights of his patients who were not parties to the suit. *Tileston v. Ullman*, 318 U.S. 44 (1943). On the other hand, the Court allowed a seller of alcoholic beverages to challenge the constitutionality of a law restricting sales to males under age 21 because even though the seller's own right to buy the alcoholic beverages was not infringed, the seller suffered his own injury by being unable to sell the beverages. *Craig v. Boren*, 429 U.S. 190 (1976). Here, the

11

Plaintiffs have suffered their own concrete, cognizable injuries from Defendants' misconduct, which are precisely the same injuries that numerous other participants suffered in their Plan accounts. Plaintiffs have their own Constitutional injuries and statutory rights to bring this claim on behalf of the plan.

Defendants' arguments about "prudential standing" and *Bennett* are simply red herrings, designed to distract the fundamental principle that there is no requirement that § 502(a)(2) claims must be brought as a class action or a derivative action under Rule 23.1. *See* ECF No. 48, at 15, 18-19; *Blankenship v. Chamberlain*, 695 F. Supp. 2d 966, 974 (E.D. Mo. 2010) ("ERISA does not expressly require join[d]er of all plan beneficiaries as a prerequisite to a section 502(a)(2) action against a plan fiduciary[.]"); *Waldron v. Dugan*, No. 07-286, 2007 WL 4365358, at *6 (N.D. Ill., Dec. 13, 2007) ("[S]ection 502(a)(2) expressly grants the right to bring fiduciary duty claims to 'participants,' and does not appear to require them to sue derivatively or to use any other special procedural devices to represent absent parties."). Reading such a requirement in is inconsistent with Congress's careful decision to give plan participants the same enforcement powers as fiduciaries and the Secretary of Labor. And as the Supreme Court has explained, ERISA is "comprehensive and reticulated statute" and courts should be "reluctant to tamper with an enforcement scheme crafted with such evident care as the one in ERISA." *Russell*, 473 U.S. at 147.

12

Defendants' due process concerns are also no more persuasive now when they were in their motion to dismiss. Plaintiffs fairly and adequately represent the interests of the other plan participants who are similarly situated, and Plaintiffs were all participants at the time of Defendants' fiduciary breaches. In addition, Plaintiffs will not settle the case without court approval, and to the extent they obtain a judgment, the Court will be able to fashion an order that will be distributed *pro rata* to all affected participants of the Plan. *See* ECF No. 48 at 15-16.

Even if some Plan participants benefitted from Defendants' breaches—an assertion as to which Defendants offer no evidentiary support[7]—there is no conflict of interest because the relief sought by Plaintiffs would have no impact on those participants. Instead, Defendants would make good the losses suffered by the affected participants in their Plan accounts. Nothing would happen to the participants who never exercised their redemption rights. Nor is there any real concern in this case with duplicative or inconsistent litigation. To the extent an affected participant recovers their losses in another proceeding, they would not get any double recovery by obtaining relief in their Plan account here. And to the extent

---

[7] This failure is no mere oversight by Defendants. Defendants know that the redemption of Plan shares at a fraction of their value caused a Plan loss that translated into a benefit for the non-Plan shareholders. The Stiefels knew this, calculated their personal benefit to the penny and circulated a celebratory email while permitting participants to cause their Plan shares to be redeemed at a fraction of their value. Pls.' SF, ¶ 70.

that a participant's rights are foreclosed by other litigation, they can be carved out of any recovery in this case. Thus, Plaintiffs are not wresting control of the litigation brought by other Plan participants.

Finally, to the extent Defendants truly have any real concern about inconsistent or duplicative litigation, which we doubt, they have procedural tools available to them to resolve the concerns, including Fed. R. Civ. P. 23, and the multidistrict litigation procedures under 28 U.S.C. § 1407, which Defendants, for whatever reason, have opted not to invoke.

**B.     The general releases do not preclude Plaintiffs from pursuing relief under ERISA.**

Defendants once again argue on summary judgment that general releases signed by Plaintiffs Mamay, Macdonald, and Raji bar their ERISA claims.[8] As set already set forth by Plaintiffs (ECF No. 48 at 20-25), Defendants are wrong.  First, the general release signed by Plaintiff Mamay in his agreement does not exclude ERISA claims and is qualified with a specific provision *excluding claims related to the Plan*. His agreement clearly states that "[t]he sole and exclusive exceptions to this General Release of All Claims [include] . . . (i) *Employee's rights under the employment benefit plans of the Company*[.]" *See* Plaintiffs' Statement of Additional

---

[8] There is no dispute that Plaintiff John Wagner did not sign a release and is not barred from bringing ERISA § 502(a)(2) claims on behalf of the Plan.

Material Facts ("SAMF"), ¶ 40 (emphasis added). There is no dispute that Plaintiffs'
claims relate to their rights under the ESBP, which is indisputably an "employment
benefit plan of the Company" as set forth by the language of Plaintiff Mamay's
agreement. Basic principles of contractual interpretation require courts to interpret
specific provisions over general ones. *See Goldberg v. Bear, Stearns & Co., Inc.*,
912 F.2d 1418, 1421 (11th Cir. 1990). Thus, the specific exception which carves out
rights under the ESBP does not release Plaintiff Mamay's ability to bring ERISA
claims on behalf of the Plan here.

Second, all three agreements at issue expressly carve out claims that cannot
be released as a matter of law, which, under ample authority, includes claims that
are brought on behalf of the Plan under § 502(a)(2). Plaintiffs Macdonald and Raji's
agreements both indicate that they release all claims "with the sole exception of the
claims that are set forth in subparagraph I.B below." Pls.' SAMF, ¶¶ 41-42. This
section, in turn, states that "[t]his General Release does not apply to claims that
cannot be released[.]" *Id.* Plaintiff Mamay's agreement contains substantially
similar language. *Id.*, ¶ 40 ("The sole and exclusive exceptions to this General
Release of All Claims [include] . . . (ii) Any claims that controlling law clearly
states may not be released by [this agreement].").

As set forth above, ERISA § 502(a)(2) representative claims brought by
Plaintiffs are not individual claims, but "by their nature, plan claims." *In re Schering*

*Plough Corp. ERISA Litig.*, 589 F.3d 585, 594 (3d Cir. 2009). Thus, a general release does not bar an individual from seeking relief on behalf of a Plan under § 502(a)(2), which Plaintiffs clearly bring here. *See* SAC, ¶¶ 28, 30-31. Indeed, in *Schering Plough*, the court specifically rejected the same argument made by Defendants here that an individual and general release barred plan-wide claims:

> [Plaintiff's] complaint frames her causes of action in terms of claims brought "on behalf of" the Plan. Nowhere does she present the claims as anything but causes of action that belong to the Plan and are based on duties owed to the Plan. There is very little authority suggesting that an individual who has signed a release is barred from bringing claims under ERISA § 502(a)(2) on behalf of an ERISA plan. Indeed, there appears to be only one case to have so concluded. *See Howell v. Motorola, Inc.*, No. 03–5044, 2005 WL 2420410, at *4–6 (N.D. Ill. Sep. 30, 2005) (valid release precludes § 502(a)(2) claim brought on behalf of a plan). The vast majority of courts have concluded that an individual release has no effect on an individual's ability to bring a claim on behalf of an ERISA plan under § 502(a)(2). *See Bowles v. Reade*, 198 F.3d 752, 759–62 (9th Cir. 1999) (concluding that the plaintiff's § 502(a)(2) claims on behalf of the plans were unaffected by her release); *Johnson v. Couturier, et al.*, No. 05–2046, 2006 WL 2943160, at *2 (E.D. Cal. Oct. 13, 2006) (release does not preclude § 502(a)(2) action); *In re JDS Uniphase Corp. ERISA Litig.*, No. 03–4743, 2006 WL 2597995, at *1 (N.D. Cal. Sep. 11, 2006) ("The release ... do[es] not bar ERISA fiduciary duty claims brought by plan beneficiaries on behalf of the plan.").

589 F.3d at 594. Consistent with the language of the agreements at issue in this case which expressly carve-out claims that cannot be releases as a matter of law, courts have held that an individual cannot release a Plan-wide claim under ERISA § 502(a)(2). As further explained in *Schering Plough*:

> [A] number of courts have held that, as a matter of law, an individual cannot release the plan's claims, and so for that reason an individual

16

release cannot bar an individual from bringing a claim on behalf of an
ERISA plan under ERISA § 502(a)(2).  See, e.g., In re Aquila ERISA
Litig., 237 F.R.D. 202, 210 (W.D. Mo. 2006) ("[T]he instant claims in
this action are brought on behalf of the Plan pursuant to ERISA
§ 502(a)(2), not by ERISA plan participants seeking individual
benefits. As a matter of law, a plan participant cannot release the Plan's
claims."); In re Williams Cos. ERISA Litig., 231 F.R.D. 416, 423
(N.D. Okla. 2005) ("[T]he Court notes that the claims here are brought
on behalf of the Plan, and a participant cannot release the Plan's claims,
as a matter of law.") (citation omitted); In re Polaroid ERISA Litig.,
240 F.R.D. 65, 75 (S.D.N.Y. 2006) ( "[N]umerous courts have held that
under ERISA, individuals do not have the authority to release a ...
plan's right to recover for breaches of fiduciary duty.").

589 F.3d at 594-95 (emphasis added). As a result, the clear weight of authority

rejects Defendants' conclusory one-page release argument. To the extent Defendants

refer to cases cited in their motion to dismiss, each and every one of these cases

were distinguished by Plaintiffs. *See* ECF No. 48 at 23-24. As for Defendants'

citation to *Bacon v. Stiefel Labs. Inc.*, the releases enforced in that case are different

than the release signed by Plaintiff Mamay here. No. 09-21871, 2011 WL 4944122,

at *2-3 (S.D. Fla. Oct. 17, 2011)). Moreover, the court did not address whether an

individual release can bar claims on behalf of the Plan under § 502(a)(2) because

those plaintiffs *did not seek to represent the Plan* as Plaintiffs do here, and instead

only sought individual relief after class certification was denied in their combined

securities fraud and ERISA case.  *Id.* at *7.[9] Hence, summary judgment is not

---

[9] The only new case cited by Defendants does not even involve a release but instead
deals with the issue of whether a private settlement involving an ESOP bars the
Secretary of Labor from filing a subsequent lawsuit. *See Herman v. Charter Med.*

warranted because Plaintiff Mamay's release expressly carves out ERISA claims,

and in any event, the individual agreements do not bar Plaintiffs' ability to seek

relief on behalf of the Plan under ERISA § 502(a)(2).

**C.     ERISA requires Defendants to disclose complete and accurate information to Plan participants, and the facts establish that Defendants breached this duty in this case.**

ERISA § 404(a) clearly requires fiduciaries to disclose all complete and

accurate information to plan participants. *See* ECF No. 73-1 at 23-28. The duty to

disclose is particularly acute where an ERISA fiduciary has "knowledge of a

beneficiary's status," thereby creating "an affirmative duty to communicate material

facts to the beneficiary which will allow for an informed decision." *Ervast v.*

*Flexible Prods. Co.*, 346 F.3d 1007, 1016, n.10 (11th Cir. 2003) (citations omitted).

The duty to disclose also exists where plan participants may be "materially and

negatively affected" by the non-disclosure, *see Hill v. BellSouth Corp.*, 313 F. Supp.

2d 1361, 1369 (N.D. Ga. 2004), or where affirmative misstatements need to be

corrected. *Woods v. Southern Co.*, 396 F. Supp. 2d 1351, 1376-77 (N.D. Ga. 2005)

(collecting cases).

Notwithstanding the overwhelming amount of case law recognizing this

fundamental duty under ERISA, Defendants claim they are entitled to summary

---

*Corp.*, 140 F.3d 1413, 1416-18 (11th Cir. 1998). Contrary to Defendants' representation of that case, the court held that the "private settlement does not bar the Secretary's independent right to sue under ERISA[.]" *Id.* at 1428.

judgment on Plaintiffs' non-disclosure claims based on sweeping generalizations of two inapposite cases involving publicly traded stock. *See Lanfear v. Home Depot, Inc.*, 679 F.3d 1267 (11th Cir. 2012) and *Fisch v. Suntrust Banks, Inc.*, 511 Fed. App'x 906 (11th Cir. 2013). But these ERISA "company stock" cases cited by Defendants involve situations that are inapplicable here. *See also* ECF No. 73-1 at 27-28. Both cases involved situations where plaintiffs alleged that fiduciaries failed to disclose potentially adverse information about business practices that led to a decline in the value of the public company stock, which in turn led to alleged losses. *See Lanfear*, 679 F.3d at 1272-73; *Fisch*, 511 Fed. App'x. at 908. Both cases also held that where participants were warned of the risk of investment in a non-diversified single stock fund, there was no fiduciary obligation to make further disclosure of non-public information regarding improper business practices. *Lanfear*, 679 F.3d at 1284-85.[10]

Unlike *Lanfear* and *Fisch*, this case does not involve publicly traded stock with a value set in the open market, but instead seeks to hold Defendants liable for

---

[10] *Fisch* involved the identical scenario. *See* Order on Defendants' Motion to Dismiss, *In re SunTrust Banks, Inc. ERISA Litig.*, No. 08-3384 (N.D. Ga., Oct. 25, 2010) (ECF No. 106 at 27) ("Defendants maintain that to the extent there was a duty to disclose the risk associated with SunTrust Stock, it was satisfied by the [Summary Plan Description] which warns Participants that the Employer Stock Fund is 'a high risk investment' that 'carrie[s] more risk than the other investment options because it depends on the performance of only one company.'").

failing to provide material information to participants when Defendants knew the true value of privately held stock held by the Plan, and the losses to the Plan accounts caused when these shares were redeemed by participants at a fraction of their true value. This case also does not involve any warnings made by Defendants that the value at which plan participants would sell their shares would be but a small fraction of what the fiduciaries knew the actual value to be. And, unlike in the company stock cases cited by Defendants, providing information regarding the true value of SLI shares would not violate any insider trading rules – or cause any drop in the value of the shares. Moreover, the disclosure would not have caused any losses to the Plan since it would have revealed that Defendants vastly *understated* the value of the Plan's SLI shares. *See, e.g.,* ECF No. 73-1 at 13-14.

The two cases cited by Defendants in a footnote are equally unavailing. ECF No. 74 at 23, n.7. *Barnes v. Lacy* did not even involve misrepresentations or omissions by fiduciaries—unlike the situation here— but an affirmative representation in a summary plan description that plaintiffs alleged was misleading. 927 F.2d 539, 541 (11th Cir. 1991) (recognizing that the trial court "found, as a matter of fact, that [defendant] had made only truthful representations, in good faith, to its employees."). In fact, *Barnes* actually underscores Defendants' duty to disclose in this case as the Eleventh Circuit recognized that fiduciaries can be liable for "material misrepresentations" which occur if fiduciaries are considering

20

alternative options—as Defendants did here in pursuing the sale of the Company—
that affect plan benefits even if "no final decision had been made" regarding the
alternative options. 927 F.2d at 544 (citation omitted).

      Meanwhile, *Phillips v. Amoco Oil Co.* is entirely unhelpful to Defendants as it
involved—among a  host of issues irrelevant to this case—whether non-vested
participants of a retirement plan sponsored by an employer who sold its operations
to a new company would receive any credit for years of service at the selling
company. 799 F.2d 1464, 1466-67 (11th Cir. 1986). In dismissing the ERISA claims
and agreeing with the plain language of the plan documents that provided retirement
benefits only for service at the purchasing company, the court made clear that the
"only 'interests' at stake in this case are contingent and non-vested future retirement
benefits." *Id.* at 1471. There is no dispute that in this case, Plaintiffs seek remedies
for losses to the Plan which do not involve contingent, non-bested benefits, but,
rather, funds that participants would have received had their Plan shares been
redeemed at fair market value, as required by ERISA.

      In addition, unlike any of the cases cited by Defendants, here, Defendants
failed to provide material information that Participants needed to make informed
decisions about whether to redeem their Plan shares. Ample authority establishes
Defendants' obligation under ERISA to provide this information. *See, e.g., Eddy v.
Colonial Life Ins. Co. of Am.*, 919 F.2d 747, 750-51 (D.C. Cir. 1990) ("[A] fiduciary

21

bears an affirmative duty to inform a beneficiary of the fiduciary's knowledge of prejudicial acts by an employer."); *see also Armstrong v. LaSalle Bank Nat'l Ass'n*, 446 F.3d 728, 734 (7th Cir. 2006) ("A trustee who simply ignores changed circumstances that have increased the risk of loss to the trust's beneficiaries is imprudent."). For instance, the undisputed material facts establish that: (1) SLI made optional diversification available to all Plan participants for the first time in company history and redeemed more shares than ever before, and did so while being fully aware that the redemption price was based on a valuation that was a fraction of the potential sale price of the Company (*see* Pls.' SF, ¶¶ 11-12, 31-40); (2) Defendants knew the potential price tag of the company was substantially higher than the value of the company represented to Plan participants (*see* Pls.' SF, ¶¶ 31-37; 40); (3) Defendants became aware of significant issues with the valuations performed on behalf of the Plan but accepted the flawed valuations nonetheless (*see* Pls.' SF, ¶¶ 64-69); and (4) the Stiefel family had actual knowledge (based on their own calculations) that they would personally profit as a result of Plan redemptions (*see* Pls.' SF, ¶ 70). As Plan fiduciaries, Defendants had an obligation to disclose this information to participants – particularly since they also had an obligation pursuant to the Plan to ensure that the Plan's SLI shares were appropriately valued, and redeemed at fair market value. Pls.' SF, ¶¶ 5-9.

22

Regarding the duty to disclose merger negotiations in particular under ERISA, Judge King has already found under the facts of this case that when "fiduciaries send communications to shareholders reporting the price of stock while knowing that the price is probably inaccurate, such merger discussions constitute material information that must be disclosed." *Bacon v. Stiefel Labs., Inc.*, 714 F. Supp. 2d 1186, 1191 (S.D. Fla. 2010). And as set forth in Plaintiffs' motion for partial summary judgment, the Eleventh Circuit has affirmed a jury verdict finding Defendants Charles Stiefel and SLI liable under the securities laws for making material misrepresentations and omissions to a Plan participant who exercised his put option on January 6, 2009. *Finnerty v. Stiefel Labs, Inc.*, 756 F.3d 1310, at 1319-21 (11th Cir. 2014). Under these circumstances, Defendants had a clear duty to disclose, and, thus, Defendants have not and cannot establish that they are entitled to summary judgment on Plaintiffs' non-disclosure claims.

**D.    Defendants' narrow reading of ERISA § 406 should be rejected as there are sufficient facts to establish the existence of a prohibited transaction.**

In yet another conclusory and one-page argument which fundamentally misconstrues ERISA, Defendants claim there was no sale or transfer involving the Plan. Defendants are once again wrong in law and fact, because the substance of Plan redemptions in connection with diversification requests were transactions between the Plan and the Company.

ERISA § 406(a) prohibits a fiduciary from causing a plan to engage in a transaction that constitutes a "direct or indirect" sale or exchange of any property between the plan and a party in interest. *See* ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A). A party in interest is defined to include, *inter alia*, "an employer any of whose employees are covered by such plan"—or in this case, SLI. ERISA § 3(14)(C), 29 USC § 1002(14)(C). Through ERISA § 406(a), Congress intended "to bar categorically a transaction which was likely to injure the pension plan." *Comm'r v. Keystone Consol. Indus., Inc.*, 508 U.S. 152, 160 (1993); *see also Leigh v. Engle*, 727 F.2d 113, 126 (7th Cir. 1984) (ERISA § 406 "should be read broadly in light of Congress' concern with the welfare of plan beneficiaries."). Notably, Defendants do not argue that they fall under any of the narrow exemptions to a prohibited transaction, including the adequate consideration standards set forth in ERISA § 408(e), 29 U.S.C. § 1108(e).

Here, the undisputed facts establish that there were direct transactions between SLI and the Plan. For participants who exercised optional diversification, their request forms expressly indicate that "[t]he ESBP distribution is a *complex transaction involving the ESBP Trust*, Stiefel Laboratories, Inc., and you[.]" Pls.' SAMF, ¶¶ 37-39. The forms additionally give the power of attorney to the Plan Administrator and appoint the Plan Administrator as agent to effectuate the sale of Plan-held company stock to the Company in one transaction. *Id.* As admitted by

24

Defendants, this process "allowed Plan participants to elect to request a distribution and then put the distributed stock to SLI, through the use of a designated agent, in a single form." ECF No. 74-1, ¶ 77. Thus, the purpose of this request was to cause SLI to purchase the shares of Plan-held company stock, thereby constituting a sale between the ESBP and SLI under ERISA § 406. Indeed, Judge King has already addressed this misguided argument and determined that participant requests were "transaction[s] between the Plan and the Company, and the individual plaintiffs merely needed to authorize the selling of the shares that they 'owned' but were held by the Plan." *Bacon*, 714 F. Supp. 2d at 1191.

Defendants' cramped interpretation of ERISA § 406 is also undercut by testimony from their own witnesses. For instance, though Matt Pattullo claims that once the participant received their Plan-held company stock, one option was to "hold" the stock rather than selling it back to the company, he admitted that Plan participants were never actually advised of this option. Pls.' SAMF, ¶ 6. Pattullo further admitted that no participant during his tenure at SLI (which lasted from the mid-90's through the GSK deal in 2009) actually "held" their stock. *Id.*, ¶ 7. Thus, the only purpose of a Plan participant's request to receive company stock from the Plan was to engage in a subsequent transaction with SLI.

25

In addition, despite Defendants' repeated assertions that optional diversification "mirrored" put requests, Defendants' own purported expert on ESOP administration matters, Steve Fischer, testified that:

> [O]ptional diversification did not permit the participant to take the distribution of stock and hold it as stock. I think in order to optionally diversify, you had to put the stock back. I think that was probably the case for statutory diversification as well . . .[11] [I]t would make no sense for a participant who wanted to diversify their portfolio to say give me my shares, and I will hold onto them forever, if they wanted to do that, they could leave it in the plan.

Pls.' SAMF, ¶ 11 (emphasis added). These admissions are fatal to Defendants' ERISA § 406 argument, as they prove that the substance of the diversification requests made by Plan participants involved the Plan and the Company.

But even if there was not a direct transaction between SLI and the Plan, an *indirect* transaction involving a plan can constitute a prohibited transaction as well *See* ERISA § 406(a)(1). The Employee Benefits Security Administration—the administrative agency responsible for administering, regulating, and enforcing the provisions of ERISA—has recognized that "[a]n indirect prohibited transaction can occur where a plan engages in a transaction with a person who is not a party in interest pursuant to an agreement or understanding whereby that person is in turn to engage in a transaction with a party in interest." *Office of Pension & Welfare*

---

[11] Hence, Plaintiffs have also established a genuine issue of material fact that the Plan has prohibited transaction claims on behalf of participants who exercised statutory diversification rights as well, such as Plaintiff Bruce Macdonald.

*Benefits Programs*, Op. No. 75-103, 1975 WL 4573, at *1 (Oct. 22, 1975).[12] Even

under an interpretation of the facts most favorable to Defendants—which is not

permissible on their motion for summary judgment—that is what occurred here.

The purpose of optional diversification was to sell the Plan-held SLI stock to

the Company. There is no dispute that the ESBP Committee had the sole discretion

to establish the terms and conditions of optional diversification. Pls.' SAMF, ¶ 3.

There is further no dispute that the ESBP Trustee at the time optional diversification

was offered, Steven Karasick, determined that Plan participants would receive the

$16,469 per share price arrived at by Bogush as of March 31, 2008. Pls.' SF, ¶ 18.

Charles Stiefel further determined how much the Company, as a party-in-interest,

would spend in connection with redeeming Plan-held company stock, including for

optional diversification requests. Pls.' SAMF, ¶ 29. And there is no dispute that as

---

[12] Countless courts have recognized ERISA § 406(a) transactions to exist even if
they do not initially or directly involve the Plan and a party-in-interest, so long as
the substance of the transaction, as is the case here with respect to optional
diversification, impacts the Plan.  *See, e.g., Chesemore v. Alliance Holdings, Inc.*,
886 F. Supp. 2d 1007, 1047 (W.D. Wisc. 2012) (finding an indirect prohibited
transaction where trustees knew that ESOP acquired shares from a party-in-interest
in two steps); *Neil v. Zell*, 677 F. Supp. 2d 1010, 1027-28 (N.D. Ill. 2009) (finding
an indirect prohibited transaction where an employer purchased shares from inside
shareholders that were later redeemed along with the shares of public shareholders
in a merger leaving the ESOP as the sole shareholder); *Sandoval v. Simmons*,
622 F. Supp. 1174, 1213 (C.D. Ill. 1985) (finding an indirect prohibited transaction
where a fiduciary voted not to tender ESOP shares in response to a stock purchase
offer); *McDougall v. Donovan*, 552 F. Supp. 1206, 1216 (N.D. Ill. 1982) (finding
an indirect prohibited transaction even though a Plan acquired the property at issue
from a third party).

of January 30, 2009, the Company had spent approximately $5.4 million in

redeeming Plan-held company stock, and that SLI redeemed more stock than ever

before. Pls.' SAMF, ¶¶ 28, 36.

Under these circumstances, Defendants were clearly aware that they were

causing the Plan to enter into transactions with the Company. In Judge King's

words, "even if this were a transaction solely between [the Plan participant] and the

Company, the Plan should not be permitted to avoid the requirements of the statute

by transferring the shares to a third party, *then* transferring them to a party in

interest." *Bacon*, 714 F. Supp. 2d at 1191, n.2 (emphasis in original).[13] As a result,

Plaintiffs have established the existence of an ERISA § 406 prohibited transaction.

**E.    The record overwhelmingly establishes that Defendants breached their
       fiduciary duties under ERISA §404(a) by not ordering an interim
       valuation in late 2009 or early 2009.**

Incredibly, Defendants contend they are entitled to summary judgment on

Plaintiffs' allegations that the Defendants—as fiduciaries tasked with the duty to act

in the best interests of Plan participants under ERISA § 404(a)—did not consider

and ultimately conduct an interim valuation in late 2008 or early 2009. Defendants

once again fundamentally misconstrue the law and the facts.

---

[13] The transaction also resulted in more profits for Defendants Charles, Todd, and
Brent Stiefel (Pls.' SF, ¶ 70), who were parties-in-interest under ERISA § 3(14),
thereby constituting an indirect prohibited transaction.

Unlike the general standards cited by Defendants, ERISA jurisprudence sets forth a *specific* standard when fiduciaries of an ESOP rely on valuation advice. Under these circumstances, "[t]he fiduciary must (1) investigate the expert's qualifications . . . (2) provide the expert with complete and accurate information . . . and (3) make certain that reliance on the expert's advice is reasonably justified under the circumstances." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 430 (6th Cir. 2002) (citing *Howard v. Shay*, 100 F.3d 1484, 1489 (9th Cir. 1996)). Indeed, in *Hall Holding*, the Court applied this specific standard to an ESOP fiduciary purportedly relying on a valuation to set the value of the company for an ESOP, exactly as Defendants claim to have done here. *See id.* at 420-21, 430-31.[14]

In addition, the Plan documents required the Company to purchase Plan-held company stock "for its current fair market value (as determined pursuant to Treas. Reg. Section 54.4975-11(d)(5))." Pls.' SF, ¶ 8. This regulation, in turn, required valuations to "be made in good faith and based on all relevant factors for

---

[14] These standards were recently confirmed in a settlement agreement between a trustee and the Department of Labor regarding the retention of ESOP valuators by a fiduciary. *See Perez v. GreatBanc Trust Co., et al.*, No. 12-1648 (C.D. Cal., June 2, 2014) (ECF No. 166-1). Consistent with *Hall Holding* and *Howard*, the settlement requires trustees to, *inter alia*, "1. prudently investigate the valuation advisor's qualifications, 2. take reasonable steps to determine that the valuation advisor receives complete, accurate and current information necessary to value the employer securities; and 3. prudently determine that its reliance on the valuation advisor's advice is reasonable before entering into any transaction in reliance on the advice." *Id.*, Att. A.

determining the fair market value of securities" by an appraiser "who customarily makes such appraisals." Treas. Reg. § 54.4975-11(d)(5).

Here, Defendants fall well short of these requirements. There is no dispute that Mr. Bogush *did not* customarily perform ESOP appraisals outside the work he performed for SLI (*see* Pls.' SF, ¶ 58), thereby proving that Defendants failed to follow their own Plan documents, a fact fatal to their arguments. In fact, Bogush confirmed that no one at SLI even asked him about his qualifications or experience as an ESOP appraiser. *Id.*, ¶ 57. Defendant Matt Pattullo also testified that neither the trustee, the ESBP Committee, nor the ESBP Board of Directors *ever questioned* Bogush's valuation techniques. Pls.' SAMF, ¶¶ 8-10. Defendants Brent Stiefel and Steven Karasick confirmed this testimony. *Id.*, ¶¶ 13-14, 17-18. And even Defendant Charles Stiefel admitted that he never had any discussions with Bogush about key aspects of his report, nor could he have, as he failed to even meet with Bogush from 2006 through 2008. *Id.*, ¶¶ 19-21; *see also* Pls.' SF, ¶ 57.

With respect to Defendants' specific claims that they had no duty to conduct an interim valuation, the evidence is overwhelmingly otherwise. In addition to Defendants' general knowledge of Bogush's inexperience and their wholesale failure to investigate his qualifications, Defendants became aware he was unqualified to value the Plan in late 2008. Defendants Matt Pattullo and Michael Cornelius were specifically told that Bogush "for years had not been at the level we

30

probably should have for a company our size." Pls.' SF, ¶ 68. In connection with retaining a possible new trustee, several Defendants also met on December 5, 2008 and considered selecting a new valuation company "in light of company growth and complexity," and also understood that "possible trustees (Horizon and Greatbanc, as current examples) will not agree to become trustee until new valuation company in place[.]" *Id.*, ¶ 69. Defendant Matt Pattullo was specifically advised on December 2, 2008 that the Bogush valuations created liability concerns for the company, and that Bogush applied an exorbitant 35% discount for lack of marketability to drive down the value of Plan-held company stock further when the industry standard for companies with an ESOP is 5-10%. *Id.*, ¶ 66. In a final *coup de grace* to Defendants' unsupportable claims, Jay Johnson—an SLI employee who worked on a project to retain a potential independent trustee for the ESBP—learned from a potential third party trustee that reviewed the Bogush valuations that SLI needed to go through a completely different valuation process prior to any further redemptions of employee-owned stock. Pls.' SF, ¶ 65. Despite these serious issues, Defendants continued to use the Bogush valuations in violation of their duties to act in the best interests of Plan participants under ERISA § 404(a).

The Stiefel Defendants also had actual knowledge no later than December 8, 2008 that in a sale, the Company could receive up to 2.5 to 4.5 times the revenue of the company, which at the time was nearly $1 billion. Pls.' SF, ¶ 36. The Stiefels

were well aware in December 2008 that the company could sell for no less than $3 billion and that the $60,000 per share price paid by Blackstone in connection with their 2007 investment would serve as a floor to any acquisition. *Id.*, ¶¶ 33-37. Finally, any argument that the Bogush valuations were proper are wholly contradicted by Defendant Todd Stiefel's admission that he did not want to provide any Bogush valuations to potential acquirers because "I don't want them thinking they are overpaying." Pls.' SAMF, ¶ 35.

These facts clearly establish that, at a minimum, there were serious issues of fact regarding the way Defendants were valuing Plan-held company stock. An interim valuation would have been in the best interests of Plan participants, even if no interim valuation had ever been performed before. Indeed, Plaintiffs' expert Dan Reser testified that a prudent fiduciary should have revalued the stock in December 2008 or January 2009.  Pls.' SAMF, ¶ 44.[15]

Defendants' two cited cases on this point are wildly off the mark. The first involved a single participant in an administrative denial of benefits claim under ERISA § 502(a)(1), which is certainly not the case here. *See Wakamatsu v. Oliver*,

---

[15] This testimony clarifies Defendants' mischaracterization of Mr. Reser's testimony in which they claim that he "concedes that the Plan Trustee could reasonably have determined that ordering an interim valuation was not in Plan participants' best interests." ECF No. 74 at 27. A review of the nine pages of testimony cited by Defendants reveals no such "concession," and to the contrary, demonstrates Defendants' misrepresentation of Mr. Reser's testimony.

868 F. Supp. 2d 866, 868-69 (N.D. Cal. 2012). And in yet another misrepresentation made by Defendants, there was no discussion about the "costs associated" with an interim valuation in this case. In the second, there was no evidence that a revaluation served the participant's best interests. *McCabe v. Capital Mercury Apparel*, 752 F. Supp. 2d 396, 410-11 (S.D.N.Y. 2010). The sponsoring ESOP company in that case was also in dire financial condition (unlike here where SLI had nearly $1 billion in revenue in 2008), and the trustee had already asked the valuator to perform two appraisals in the prior year given concerns over the first. *Id.* at 409-10.

Finally, Defendants claim that Plaintiffs have not offered any evidence to establish damages on their interim valuation goes nowhere. Putting aside the issue that damages are questions normally reserved for the fact-finder at trial, *see, e.g., Love v. City of Mobile*, 724 F. Supp. 2d 1208, 1214-15 (S.D. Ala. 2010), and that Plaintiffs hired an expert to value the Plan in 2007 and 2008, the damages Plaintiffs have to prove are in connection with their ERISA § 404(a) breach of fiduciary duty claims as a whole. One method of proving damages *may* be what an interim valuation could have revealed, but that is certainly not the *only* way. In fact, in the context of determining loss sustained by an ESOP, there are a variety of ways to measure loss, including (1) the difference between the price paid and the actual market value of the stock, (2) the difference between the profit which the Plan would have realized absent a breach, or (3) the difference between the price paid

and the current value of the stock. *See Neil v. Zell*, 767 F. Supp. 2d 933, 944-48 (N.D. Ill. 2011) (accepting all three measures of damages). Furthermore, as set forth previously, the disgorgement claims Plaintiffs bring here "do not require that a plaintiff suffer a financial loss, as relief in a disgorgement claim is measured by the defendant's profits." *Edmonson*, 725 F.3d at 415 (citation omitted).

In short, the record establishes that it was in the best interests of Plan participants to conduct an interim valuation. This cannot be genuinely disputed given that GSK paid $3.6 billion for SLI, which equated to nearly $70,000 per share for SLI stock *just two months after Defendants paid Plan participants $16,469 per share based on a valuation of SLI of $876.6 million*. Pls.' SF, ¶ 60. Defendants are not entitled to summary judgment regarding the necessity of an interim valuation.

**F.    There are sufficient facts to establish that Defendants should have suspended optional diversification.**

The same red flags that compelled Defendants to conduct an interim valuation also compelled Defendants to suspend optional diversification. Defendants had knowledge of serious issues with respect to the valuation process, yet approved that same process for redeeming Plan participants who requested optional diversification while simultaneously negotiating for the sale of the Company at a price tag they knew was four times greater than what was being represented to Plan participants.

Nevertheless, Defendants argue that because optional diversification had been fully vetted by the Company for over a year, and because a benefits consultant had advised the Company that optional diversification was "a best practice," they had no choice but to proceed. This is false. As set forth previously, the ESBP Committee had the sole discretion to set the terms and conditions of optional diversification (*see* Pls.' SAMF, ¶ 3), and therefore had the corresponding authority to suspend this program if necessary. In fact, Section 9.14 of the Plan specifically provided:

> The Committee shall exercise in good faith its authority to approve or disapprove elections by Participants and Beneficiaries which are subject to its approval, and *may decide in its sole discretion to permit modifications of elections and to defer or accelerate benefits* to the extent consistent with applicable law and the best interests of the persons concerned.

Pls.' SAMF, ¶ 2 (emphasis added). Matt Pattullo further testified that he was aware that the ESBP Committee could defer benefits and had done so in the past. Pls.' SAMF, ¶ 10 (Pattullo Dep. at 92:7-17).

In addition, Defendants' suggestion that amending the Plan to allow for optional diversification is a settlor function (without citing any case law in support thereof) is beside the point, because determining the price of employer securities is without question a fiduciary function, and was required by the Plan. *See, e.g., Henry v. Champlain Enters., Inc.*, 212 F.R.D. 73, 86 (N.D.N.Y. 2003) (finding that

valuation of private employer securities is a fiduciary function).[16] A benefits consultant's recommendation has no impact on the ERISA § 404(a) analysis, particularly where there is no evidence that the consultant was providing any fiduciary advice.

Defendants meekly contend in a footnote that they could not have suspended or deferred Plan rights without complying with ERISA's blackout rules. ECF No. 74 at 29, n.14. Aside from the lack of any evidence to establish that a blackout period even applies, Defendants' argument has been put to rest by the Eleventh Circuit's decision in *Finnerty*, which recognized that because the Steifels decided to move on a sale on November 26, 2008, a blackout period could have been imposed at any point thereafter. 756 F.3d at 1324, n.11. In addition, as recognized by *Finnerty*, "[a] suspension, limitation, or restriction 'which occurs by reason of the application of the securities laws,' however, is exempt from the definition of 'blackout' period[.]" *Id.* at 1323 (citing 29 U.S.C. § 1021(i)(7)(B)(i)). In other words, adhering to securities laws and disclosing merger negotiations—which the Eleventh Circuit held that Charles Stiefel and SLI should have done—is a statutory exception to a

---

[16] In yet another example of Defendants' egregious misrepresentations to the Court, they state Plaintiffs' expert Mr. Reser testified that "suspending optional diversification would likely have been harmful to Plan participants." ECF No. 74 at 29-30. Plaintiffs once again invite the Court to review the cited testimony, which reveals no such statement.

blackout period. Defendants' continued insistence that it would not have been in the

participants' best interests to suspend optional diversification, particularly when the

Stiefels had knowledge of the profits that would receive in any sale at the expense of

the ESOP (*see* Pls.' SF, ¶ 70), defies common sense.[17]

## G.    Plaintiffs' claims are timely.

ERISA § 413, which governs the timeliness of ERISA claims, provides that:

> No action may be commenced … after the earlier of—(1) six years
> after (A) the date of the last action which constituted a part of the
> breach or violation, or (B) in the case of an omission the latest date on
> which the fiduciary could have cured the breach or violation, or
> (2) three years after the earliest date on which the plaintiff had actual
> knowledge of the breach or violation; except that in the case of fraud or
> concealment, such action may be commenced not later than six years
> after the date of discovery of such breach or violation.

ERISA § 413, 29 U.S.C. § 1113.

Under either (1) or (2), Plaintiffs' claims are timely. The "last action" which

constituted a part of the breach was the redemption of Plan shares at deficient prices

in February 2009. Thus, under (1)(A), Plaintiffs had until February 2015 to file this

action. Because this case was brought on September 14, 2012, it is timely under this

---

[17] Defendants cite just one case in support of their argument regarding optional
diversification that is again inapplicable to this case. ECF No. 74 at 30 (citing
*Camera v. Dell, Inc.*, No. 13-876, 2014 WL 2767359 (W.D. Tex. June 17, 2014).
Unlike here where a fundamental component of Plaintiffs' allegations are
Defendants' failure to disclose material information, in *Camera*, the fiduciaries
were "not accused of withholding information from the public. Instead, they [were]
being faulted for not using their superior knowledge of [defendant's] internal plans
to help the plan participants take unfair advantage of the market." *Id.* at *5.

prong of the statute. Furthermore, this case concerns "omissions" as Charles Stiefel and SLI omitted material information in disclosures to Plan participants, as confirmed by the Eleventh Circuit in *Finnerty*. The "latest date on which the fiduciary could have cured the breach or violation," (*see* § 413(1)(B)), was early 2009 by revaluing Plan-held company stock, suspending optional diversification, or entering into a "voluntary correction program" as recommended directly to Defendant Matt Pattullo. Pls.' SF, ¶ 66.  Hence, under (1)(B), Plaintiffs had until early 2015 to file this action. Again, by filing on September 14, 2012, Plaintiffs are well within this deadline. *See*, *e.g.*, *Reich v. Johnson*, 891 F. Supp. 208, 209 (D.N.J. 1995) (measuring limitations period based upon when defendants could have cured the breach in an omissions case under ERISA § 404(a)).

The Complaint is timely under § 413(2) as well. First, the Eleventh Circuit's opinion in *Finnerty* documents, *inter alia*, how Defendants' failure to disclose its merger activities, when coupled with their failure to correct misleading forward-looking statements that SLI would remain privately held, were sufficient to support a verdict of securities fraud. *Finnerty*, 756 F.3d at 1319, 1321. Hence, the six year fraud or concealment provision of § 413(2) applies here, and with it, the six year from discovery limitations period. Assuming that Plaintiffs became aware of their claims when the *Finnerty* complaint was filed in July 2009, and, thus, Plaintiffs

discovered their claims on that date, the deadline for filing was July 2015. Under this provision as well, Plaintiffs' claims are timely.

Finally, Plaintiffs' claims are timely even under the three year period in ERISA § 413(2) pursuant to *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974); *see also* SAC ¶ 32. There is no dispute that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Id.* at 554. Any other rule would give absent class members "every incentive to file a separate action prior to the expiration of [their] own period of limitations," thus resulting in "a needless multiplicity of actions—precisely the situation that [Rule] 23 and the tolling rule of *American Pipe* were designed to avoid." *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 351 (1983).

Here, Defendants concede that "Plaintiffs are all former members" of the class proposed in the *Finnerty* action. ECF No. 44 at 2. Defendants have also even *argued* that Plaintiffs' claims are "virtually identical" to the "ERISA §§ 409, 502(a)(2), and 502(a)(3) breach of fiduciary duty and prohibited transactions claims" alleged in *Finnerty*. *Id.* at 2-3; ECF No. 55 at 6. And as Defendants also admit, upon learning of the *Finnerty* class action, the Plaintiffs investigated whether they were class members. ECF No. 74 at 18-20. Having verified that they were, they elected to forestall bringing their own claims during the pendency of the class

action, thus preventing the precisely the "multiplicity of actions" the Court sought to prevent in *American Pipe*. *See id.* at 552 ("Not until the existence and limits of the class have been established . . . does a class member have any duty to make note of the suit or to exercise any responsibility with respect to it[.]"). This case is, as such, quintessentially appropriate for *American Pipe* tolling.

Defendants also misunderstand *American Pipe* tolling as extending only to the precise claims asserted in the prior action. *Raie v. Cheminova, Inc.*, 336 F.3d 1278 (11th Cir. 2003)—the case on which Defendants appear to base this misapprehension—does not so hold. *Raie* instead holds that where the subsequent plaintiff was unable to establish that it was a member of the class in the prior action, it was not entitled to *American Pipe* tolling. *Id.* at 1282-83. Here, Plaintiffs' claims are certainly not "different in kind" or brought by non-members of the earlier classes as were the wrongful death claims discussed in *Raie*. Instead, Plaintiffs' claims are brought under the same statutory causes of action, alleging violations of the same substantive duties, against the same defendants, and rely on the same facts, evidence and witnesses as did the claims in *Finnerty*. *See American Pipe*, 414 U.S. at 561-62 (Blackmun, J., concurring) (claims tolled if they concern the "same evidence, memories, and witnesses as the subject matter of the original class suit").

In addition, Plaintiffs' assertion that Defendants should have replaced themselves with independent trustees is not a new claim, but rather an additional

reason why Defendants have breached their fiduciary duties under ERISA § 404(a). And simply because Plaintiffs have added citations to ERISA § 406(a)(1)(A), (D) and (b)(1) as ways in which Defendants entered into prohibited transactions does not suggest they are "different in kind" from the prohibited transaction claims set forth in *Finnerty*. *See, e.g., Crown, Cork*, 462 U.S. at 355 (Where a defendant has adequate notice of the "substantive claims being brought against them . . . *American Pipe* is not abused by the assertion of claims that differ from those raised in the original class suit.").

Defendants also argue that *American Pipe* tolling does not apply to Plaintiffs' § 502(a)(2) claim, because it is a "subsequent representational claim." None of the cases cited by Defendants, however, stand for that proposition that a claim on behalf of the Plan under § 502(a)(2) cannot obtain *American Pipe* tolling. Defendants offer no authority for the proposition that when an ERISA class action is filed, the statute continues to run on subsequent actions by Plan participants who have standing to bring claims on behalf of the Plan. As the Defendants have stated *ad infitem* this case is not a class action. As such, there is no possibility that this case will require relitigation of Rule 23 issues that a court previously adjudicated in the *Finnerty* case. Plaintiffs are instead proceeding on behalf of the Plan pursuant to their statutory right to do so. Thus, there is no principled reason to prevent *American Pipe* tolling, and abundant reasons to provide it. Indeed, the precise reason given by the

41

Supreme Court for *American Pipe* tolling—the prevention of redundant cases while the class case is pending—applies to this action.

## H.     There is no requirement that undervaluation claims be brought under ERISA § 502(a)(1)(B).

Defendants argue that Plaintiffs cannot seek relief under ERISA § 502(a)(3) "for [Plaintiffs'] claim that the Trustee engaged an unqualified valuator who undervalued the stock held by the Plan," because, Defendants argue, adequate remedies were available under § 502(a)(1)(B). This defies the statutory framework of ERISA. While both §§ 502(a)(1)(B) and 502(a)(3) permit suits to redress violations of the plan, each provision provides for different types of relief from different sources. Here, the nature of the relief sought and the sources from which such relief would be appropriate indicate that Plaintiffs' claims are properly brought under § 502(a)(3), not § 502(a)(1)(B).

In general, ERISA § 502(a)(1)(B) allows plan participants to sue to recover benefits that they are owed. *See Heffner v. Blue Cross & Blue Shield of Ala., Inc.*, 443 F.3d 1330, 1338 (11th Cir. 2006) ("[T]here are three distinct remedies available to a participant or beneficiary under § 502(a)(1)(B): 'an action ... [1] to recover accrued benefits, [2] to obtain a declaratory judgment that she is entitled to benefits under the provisions of the plan contract, and [3] to enjoin the plan administrator from improperly refusing to pay benefits in the future.'") (quoting *Russell*, 473 U.S.

at 147). Thus the relief available under § 502(a)(1)(B) ultimately comes in the form of benefits paid from the plan itself.

ERISA § 502(a)(3), on the other hand, "admits of no limit (aside from the 'appropriate equitable relief' caveat...) on the universe of possible defendants[]— the focus, instead, is on redressing the '*act or practice* which violates any provision of [ERISA Title I, *et seq.*].'" *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 246 (2000) (emphasis in original). Thus, a § 502(a)(3) action can be brought against a plan fiduciary or even a non-fiduciary individually, *id.* at 246-47, and "appropriate equitable relief" includes the forms of relief traditionally available for breach of trust at common law, such as the imposition of a constructive trust, restitution, and disgorgement of proceeds and profits. *Id.* at 250.

In this case, the Plaintiffs received their benefits, but the value of those benefits was diminished by Defendants' fiduciary misconduct. "[D]iminish[ing] plan assets payable" and "impair[ing] the value of plan assets" are quintessential fiduciary breaches, *LaRue*, 552 U.S. at 256, and are as such remediable under § 502(a)(3). Both of the cases cited by Defendants, on the other hand, are inapposite, and unlike this case, concerned garden variety failure-to-pay-benefits claims in welfare plans, not pension plans. In addition, when SLI redeemed Plan-held company stock, it was SLI that was to pay the price set by the valuator into

Plaintiffs' Plan accounts. Defendants' misconduct reduced SLI's obligations, and it is SLI and the individual Defendants that should repay the difference.

Moreover, the Plan was a defined contribution plan – meaning that its assets were divided among the plan accounts of the participants. If the Plan itself were called upon to make up SLI's underpayment, that money would have to come from the accounts of other participants, which is not what Plaintiffs seek in this case or what ERISA requires. Thus, there is no way for the Plan itself to compensate Plaintiffs for the harm they suffered in their plan accounts, and thus no way for the Plaintiffs to obtain relief from the Plan under § 502(a)(1)(B). Instead, the appropriate relief in this case is from the Defendants under §§ 502(a)(2) and 502(a)(3), and not from the Plan under § 502(a)(1)(B).

**I.   Plaintiffs have established that their derivative monitoring duty claims under ERISA § 404 and breach of co-fiduciary claims under ERISA § 405 should proceed to trial.**

Because Plaintiffs have established that their breach of fiduciary duty claims survive under ERISA §§ 404 and 406, there is no basis to dismiss their monitoring and co-fiduciary claims. In any event, there is ample evidence in the record in this case to show that the Defendants were fully aware of and participated in each other's breaches. In particular, Defendants each had knowledge of the deficiencies in the Bogush valuation and in Bogush's qualifications. The Stiefels also were (1) negotiating for the sale of the company beginning in late 2008, (2) aware of the

44

price the company could sell for, and (3) had specific knowledge that they would receive a higher payout as a result of Plan redemptions occurring well below various sale scenarios. And as admitted by Brent Stiefel, the board was responsible for the oversight of the ESBP Trustee, the ESBP Committee, and Terence Bogush, including the responsibility to "monitor the Bogush valuations" and to "speak up if there were any red flags with Bogush's valuations." Pls.' SF, ¶ 39.

Moreover, the jury in *Finnerty* concluded that Defendant Charles Stiefel had the "power to control the general affairs of [Defendant] Stiefel Laboratories, Inc." and that he had the "power to directly or indirectly control or influence the specific corporate policy of Stiefel Laboratories, Inc. which resulted in the Rule 10b-5 violation." Pls.' SF, ¶ 75. This fact alone establishes that Plaintiffs' monitoring and co-fiduciary claims are not subject to summary judgment.

## IV.   CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Court deny Defendants' motion for summary judgment in its entirety.

Dated: September 30, 2014.

RESPECTFULLY SUBMITTED,

By: */s/ Joshua A. Millican*
**LAW OFFICE OF JOSHUA A. MILLICAN, P.C.**
Joshua A. Millican
Georgia Bar No. 508998
44 Broad Street, N.W., Suite 607
Atlanta, GA 30303
Telephone: (404) 522-1152
Facsimile:  (404) 522-1133
joshua.millican@lawofficepc.com

By: */s/ Derek W. Loeser*
**KELLER ROHRBACK L.L.P.**
Lynn Lincoln Sarko
Derek W. Loeser
David J. Ko
1201 Third Avenue, Suite 3200
Seattle, WA  98101
Telephone: (206) 623-1900
Facsimile:  (206) 623-3384
lsarko@kellerrohrback.com
dloeser@kellerrohrback.com
dko@kellerrohrback.com

**KELLER ROHRBACK P.L.C.**
Gary A. Gotto
Gary D. Greenwald
3101 North Central Avenue, Suite 1400
Phoenix, Arizona 85012
Telephone: (602) 248-0088
Facsimile:  (602) 248-2822
ggotto@kellerrohrback.com
ggreenwald@kellerrohrback.com

***Counsel for Plaintiffs***

46

## CERTIFICATE OF COMPLIANCE WITH LR 5.1C

I HEREBY CERTIFY that the foregoing pleading was prepared in Times New Roman, 14-point font.

By: _/s/ Derek W. Loeser_____
   Derek W. Loeser

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 30, 2014, I caused to be served a true and correct copy of the Plaintiffs' Opposition to Defendants' Consolidated Motion for Summary Judgment to all counsel signed up to receive ECF notices in this case.

DATED this 30th day of September, 2014.

By: */s/ Derek W. Loeser*
Derek W. Loeser

48